UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KEVIN GREEN,                                          **SECOND**
JULIAN PEREZ,                                         **AMENDED COMPLAINT**
NICK CIECHALSKI

                          Plaintiff,                  Civ. No.: 1:23-cv-01166

vs.

CITY OF BUFFALO,
BATTALION CHIEF RONALD K. BOURGEOIS, Individually
and in his Official Capacity as Battalion Chief,
COMMISSIONER WILLIAM RENALDO, Individually and in
his Official Capacity as Commissioner
DEPUTY COMMISSIONER RAMON SUAREZ, Individually
and in his Official Capacity as Deputy Commissioner
MAYOR BYRON BROWN

                          Defendants.

_____

    Plaintiffs, Kevin Green, Julian Perez, and Nick Ciechalski, by and through their

attorneys, Tiveron Law, PLLC, as and for their Amended Complaint against Defendants City of

Buffalo, Commissioner William Renaldo, Battalion Chief Ronald Bourgeois, Deputy

Commissioner Ramon Suarez, and Mayor Byron Brown alleges as follows:

## NATURE OF CASE

    1.    This is an action to recover damages and other relief pursuant to 42 U.S.C.

§ 1983 for violations of Plaintiffs' constitutional rights; and 42 U.S.C. §§1985 and 1986

for conspiracy to interfere with Plaintiffs' constitutional rights. There is also a New York State

Cause of Action for New York Human Rights Executive Law § 296.

    2.    Plaintiffs' claims arise from unconstitutional conduct of the Defendants

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

targeting Plaintiffs in violation of equal protection under the laws or any other New York causes of action.

    3.      Plaintiffs were subject to intimidation by Defendants Battalion Chief Ronald Bourgeois, Commissioner William Renaldo and Deputy Commissioner Ramon Suarez who were acting as agents of the remaining Defendants.

**PARTIES**

    4.      Plaintiff, Kevin Green ("Green"), is a former Buffalo Fire recruit, who attended the Buffalo Fire Academy in 2020.

    5.      Plaintiff, Julian Perez ("Perez"), is a former Buffalo Fire recruit, who started at the Buffalo Fire Academy in 2020, residing at 250 Saranac Avenue, Buffalo, New York 14216.

    6.      Plaintiff, Nick Ciechalski ("Ciechalski"), is a former Buffalo Fire recruit residing at 108 Meridan Street, Buffalo, New York 14220.

    7.      Defendant, City of Buffalo ("City"), is a municipality in New York, with offices at 65 Niagara Square, Buffalo, New York 14202.

    8.      Defendant, Commissioner William Renaldo ("Commissioner" or "Renaldo"), is the Commissioner of the Buffalo Fire Department with his office at 195 Court Street, Buffalo, New York 14202.

    9.      Defendant, Deputy Commissioner Ramon Suarez ("Deputy Commissioner" or "Suarez"), is a deputy commissioner at the Buffalo Fire Department with offices located at 195 Court Street, Buffalo, New York, 14202.

    10.      Defendant, Fire Chief Ronald Bourgeois ("Chief of Training" or "Bourgeois"), was the Training Chief and the Municipal Training Officer at the Buffalo Fire Department during the period that the Plaintiffs were enrolled in the Buffalo Fire Academy in 2020.

11.     Defendant, Mayor Byron Brown ("Mayor" or "Brown"), was the Mayor of Buffalo during the period the Plaintiffs were enrolled in the Buffalo Fire Academy in 2020.

12.     During the time Plaintiffs were at the Buffalo Fire Academy, Shannon Street was the Deputy Commissioner for the Buffalo Fire Department. As part of his duties, Deputy Commissioner Street managed personnel as part of the Buffalo Fire Department. Historically, the Deputy Commissioner for B-51 managed the recruits of the Buffalo Fire Academy and oversaw the Chief of Training to handle all issues of personnel. Shannon Street was appointed Deputy Commissioner of the Buffalo Fire Department in charge of Personnel by Mayor Byron Brown on July 16, 2018 until his removal on January 3, 2020. *See* Exhibit B.

13.     Shannon Street observed systematic racism and politicization at the Buffalo Fire Department Academy which is charged with the training of new recruits. *Id*.

14.     During the course of his job, Shannon Street brought issues regarding Bourgeois to the Commissioner's attention, but these matters were not addressed. Specifically, Bourgeois had been circumventing the chain of command and refusing to communicate with Shannon Street who had been advocating for some of the recruits who Bourgeois had attempted to take adverse action against for questionable reasons. *Id*.

15.     Shannon Street had complained multiple times to the Commissioner that Bourgeois was not properly reporting to him and following the chain of command. Upon information and belief, Bourgeois circumvented Shannon Street's review of his personnel decisions, and circumventing his ability to review dismissal actions of new recruits in the Buffalo Fire Academy.

16.     When Shannon Street brought these issues up with the Commissioner, oversight over Bourgeois and the Recruits in the Buffalo Fire Academy was moved from Shannon Street to

Tiveron Law, PLLC
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

Deputy Commissioner Ramon Suarez who was the Deputy of B-52 which managed tools, equipment, and apparatus and not handled these issues in the past.

17.    As a result of this situation, Deputy Commissioner Shannon Street would not be communicated with on matters affecting recruitment issues and personnel issues including termination of recruits from Buffalo Fire Academy. Upon information and belief, Shannon Street would receive no notice of issues with recruits, and termination would only occasionally cross his desk when they were seeking someone to sign off on the dismissal without proper discussion of the issues.

18.    Shannon Street eventually brought his concerns directly to the Mayor, and brought to his attention egregious instances of racial and gender prejudice and political favoritism. *Id*.

19.    Shannon Street was demoted from his position as Deputy Commissioner and finished out his career as a Captain. Upon information and belief, Shannon Street was demoted for standing up for recruits and personnel who had adverse actions taken against them by Defendants. Upon Information and Belief, Shannon Street's role as Deputy Commissioner was given to Captain Paul Eason Jr after his departure who had previously worked closely with Defendant Bourgeois and was amenable to the discriminatory actions of Defendants. See *Id*.

20.    Deputy Commissioner Ramo Suarez exercised little to no oversight or review of the termination decisions and other actions that were carried out by Bourgeois. As a result, during the period that Plaintiffs were enrolled and ultimately terminated from the Buffalo Fire Academy they had no proper process of review to prevent termination on improper grounds including racial discrimination and age discrimination.

{H3982033.1}

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

4

21.     Upon information and belief, a number of minority recruits who were having issues with the evaluation standards in the academy attempted to have a meeting with Commissioner Renaldo. These recruits were denied a meeting and turned away without any avenue to address their concerns. A short time after, white recruits from the academy who were concerned with evaluation standards were brought into Commissioner Renaldo's office to discuss the matter.

22.     Upon information and belief, in March 2019 a black recruit was elbowed by another white recruit who called the recruit a "fucking nigger." The black recruit was called into Defendant Bourgeois office who informed the black recruit he needed to be written up for the incident. Bourgeois listened to both sides of the story and said both would be written up but only the black recruit was asked to sign a paper.

23.     This black recruit was later put into a company with this white recruit. On June 10th, five days before graduation the black recruit was called into Bourgeois' office where he was informed that everything looked good for graduation. Later, this black recruit was called in and kicked out of the Fire Academy without explanation and later told it was for "insubordination".

24.     Upon information and belief, Defendants have records that show this black recruit outperformed four white recruits who were retained by the Defendants including a recruit named Matthew Kieta who had previously been disciplined for his behavior and conduct.

25.     In 2020, the Buffalo Fire Academy took a class of about 50 students including the Plaintiffs in this action.

26.     The program start was delayed four months to July 2020 due to the COVID-19 pandemic.

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

27.     As the Chief of Training, Bourgeois was authorized by State Statute to recommend minimum standards of education and physical condition required of each candidate for any firefighter position and develop and conduct an examination program to certify fire service personnel who satisfactorily demonstrate their ability to meet the requirements of the fire service training and education program standards. (Exhibit A at 14).

28.     According to the Rules and Regulations of the Buffalo Fire Academy, no recruit will graduate from the Buffalo Fire Department Academy Recruit Firefighter Training Program if in the opinion of the Chief of Training, the Municipal Training Officer, or the Commission of Fire displays any of a number of concerns.

29.     These concerns include: "failure to perform all evolutions in accordance with Academy Policy as prescribed by the Chief of Training." (Exhibit A at 16).

30.     The Chief of Training was Defendant Bourgeois, and he set the policy of failure or success for the Buffalo Fire Academy.

31.     Upon information and belief, Defendant Bourgeois changed the rules and regulations under which the Buffalo Fire Academy operated. Defendant Bourgeois commented to Plaintiffs that "everyone was there on a grant, and despite what you all think, you can be fired and we can apply the grant to others."

32.     Under the rules and regulations it appears to permit make-up examinations in one section with a limitation that make-up examinations will be limited to a 70% score regardless of the actual passing score.  (Exhibit A at 17). Despite this allowance, a recruit would need an overall GPA of 70% or above to take part in graduation ceremonies and to receive passing grades.

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

33.     In the same rules and regulations, it is noted that the minimum passing score for individual tests is 70% with a minimum cumulative passing score for recruits of 70%. (Exhibit A at 24). These regulations also note that "No retakes will be administered!" *Id*. The regulations note that seven written exams will be given and count towards your GPA and a final average below 70% shall constitute grounds for dismissal.

34.     Under these regulations, any recruit who failed a written exam would not be permitted to retake the examination, and he would "fail a subject" and be subject to dismissal by Bourgeois despite an overall GPA of above 70%.

35.     Upon information and belief, instructors at the 2020 Buffalo Fire Academy were not trained as teachers or instructors but were firefighters who worked for the city who were assigned to teach recruits with no additional training. Additionally, Bourgeois changed the curriculum of the Buffalo Fire Academy upon return to the academy in July 2020 and there were no updates to the teaching methods, materials, or instruction to adjust for this curriculum change. The program was rushed and accelerated, with limited time for practice for evaluations, cutting of remedial classes, and changing expectations.

36.     Plaintiffs would attend review classes to prepare for the upcoming written examinations but Bourgeois did not go over things that would be on the examinations. Plaintiffs would ask questions but the instructors wouldn't be able to provide them with answers as a result of the changed curriculum.

37.     Upon information and belief, there were multiple questions on each test that were disputed by recruits and other answers that had been provided by instructors.

38.     Upon information and belief, Rob Jackson had opened up an extracurricular program to help some of the recruits properly learn the applicable standards and practice their

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

field evaluations. This program was eventually shutdown by Defendant Bourgeois who found out and informed the participating recruits that they would be terminated if they continued to attend Rob Jackson's unaffiliated supplementary assistance program.

39.     Upon information and belief, these extremely restrictive standards and poor instruction resulted in nine recruits being dismissed from the 2020 Buffalo Fire Academy including the Plaintiffs.

40.     Upon information and belief, at the request of Mayor Brown and the Commissioner, four of these recruits were retained despite Bourgeois' determination to dismiss these recruits whereas the Plaintiffs were not provided that opportunity despite requests for reinstatement in March 2021.

41.     Plaintiffs' termination all arises from the discriminatory and unconstitutional actions of Bourgeois who dictated Buffalo Fire Academy policy during his employment as Chief of Training. This policy was adopted by Defendants Suarez, the City of Buffalo, and Commissioner Renaldo through their actions by allowing the discriminatory conduct to continue and failure to address it when it was brought to their attention.

42.     On February 8, 2022, Plaintiffs' counsel received word from Defendant City of Buffalo that it conducted an investigation and found the Buffalo Fire Department acted appropriately and lawfully, and denied admission to Plaintiffs to the February 2022 Buffalo Fire Academy class.

43.     On August 22, 2022, Plaintiffs' attorneys issued a FOIL Request requesting documents surrounding the actions in this complaint. On March 3, 2023, Plaintiffs' counsel again requested a response regarding its FOIL Request. The Buffalo Fire Department never responded to Plaintiffs' request, and these documents are needed to properly adjudicate these issues.

{H3982033.1}

8

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

## KEVIN GREEN

44.    Green was accepted into the Buffalo Fire Academy in the spring of 2020 after passing his firefighter exam and background check.

45.    During his time at the academy, instructors were rushing through PowerPoints and lessons and did not provide adequate support to be able to pass the coursework requirements of the academy.

46.    Additionally, the reading schedule was changed and out of order and many aspects of the academic training were switched up and rushed which affected Plaintiff Green's performance on the required academic tests.

47.    Instructors at the Buffalo Fire Academy would respond to Green's questions by telling him to read a book and refused to provide him with additional assistance. To keep on top of his schoolwork, Green would ask what readings he should reread and would ask questions about topics he did not understand but did not receive assistance from Defendants.

48.    Green repeatedly asked for additional help because the topics reviewed in class and on his own time were not on the exams.

49.    Upon information and belief, other students would ask questions that the instructors would not or could not answer and they would simply direct students to read their books without helping them understand the material.

50.    There was no standardization of grading, and it was easy for instructors to manipulate scores to prevent certain cadets from passing the Academy.

51.    Other cadets were supposed to be terminated due to failing grades and practical exams, but Mayor Brown and Commissioner Renaldo told the Academy not to let anyone else go after Plaintiff had already been dismissed.

9

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

52. When Plaintiff asked Defendant Bourgeois about why there was a discrepancy between the topics reviewed and what was on the test, Defendant Bourgeois indicated he made the test the morning that it was administered.

53. Plaintiff asked Defendant Bourgeois if he had used the same approach for previous Fire Academy Classes. Upon information and belief, Defendant Bourgeois indicated that he changed the curriculum entirely.

54. Bourgeois told Green that he had changed the entire curriculum, but refused to provide Green with assistance for the new curriculum and instead pointed him to outdated materials.

55. Previously, the Training Academy provided EOC time on Saturdays with actual teachers who took the time to properly teach the material in a way it was accessible.

56. Green had demonstrated proficiency with the field events, passing twenty-five (25) of a total twenty-six (26) field events.

57. Green was told by instructors at the Buffalo Fire Academy, that they could terminate him even if he was on a grant.

58. Green was terminated by the Buffalo Fire Academy on September 7, 2020. Buffalo Fire Academy was forced to shut down in Spring 2020. When the program started back up, it was accelerated and class time was cut short, and practice for evaluations was cut short.

59. Bourgeois announced there would no longer be remedial classes offered.

## JULIAN PEREZ

60. After years of effort, Perez passed his firefighter exam, background check, and moved to the City of Buffalo to enroll in the Buffalo Fire Academy. Perez found out he was admitted to the Academy in late January 2020.

{113982033.1}

10

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

61.    Given the late start of the Spring 2020 Academy due to the COVID-19 pandemic, Perez anticipated a difficult academy process. In preparation for this difficult experience, Perez did all of the assigned readings before the Academy started up in July 2020. Even with this preparation, Perez did not anticipate the program to be accelerated and cut short in some ways altogether.

62.    Due to Perez's extra work before the Academy started, he was able to keep up academically, but despite his efforts, Perez was not able to practice the field skills prior to the start of the Academy. At first Perez performed well on the field evaluations, and those that he struggled with he sought assistance through remedial classes to get ongoing practice and competence in those areas.

63.    On August 2, 2020, on the first day back at the Academy after the COVID-19 shut down, Perez was written up for the first time. Perez was falsely accused of not finishing a run, and refused to sign the write-up but was written up for doing "¼" of the workout.

64.    On August 4, 2020, he was forced to complete CPAP training in full turnout gear, while the rest of the company was not. Firefighter Duke told Perez, "You think you are likable. Everyone here fucking hates you."

65.    On August 22, 2020, during a hazmat class, Firefighter Gilliam pointed Perez out to Firefighter Johnson Jr. and said, "Look at this piece of shit. I don't know what the fuck he's still doing here."

66.    Later on, Perez was sent to ECMC to have his knee looked at after an injury. Medical staff told Perez he was cleared, but to rest and ice his knee for two days. When Perez came back from ECMC, he was put right into physical training without any consideration for his injury.

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

67.     During the third week of evaluations, Perez had a bad showing and failed three evaluations which left him in danger of being dismissed from the Bufalo Fire Academy.

68.     After this performance, Perez went to remedial classes to make sure he could perform all the field tests they would be evaluated on. However, a day after he had attended the first remedial class, Bourgeois announced that remedial classes were being cut.

69.     For the rest of the week, Perez learned new skills but was unable to practice them in remedial classes to prepare for his upcoming evaluations. The next week remedial classes were restored and Perez attended all sessions available.

70.     During evaluations, Perez successfully completed all evaluations he had attended remedial classes for. Despite his performance, Perez failed two skill assessments for which no remedial classes were offered due to Bourgeois' decision to remove necessary remedial classes.

71.     As a result of this, Perez was dismissed from the Buffalo Fire Academy.

72.     In addition to the lack of remedial classes, two of the evaluations that Perez failed were a result of events outside of his control that he was not given the option to dispute.

73.     During one field event, Perez was required to pull a hose and stop pulling at the direction of his teammates. Perez's team ended up going over time because the instructors put out five lengths of house instead of the four required for the evaluation.

74.     Perez was not provided with any opportunity by Defendants to dispute this fail or even make a comment about it but was told to sign a sheet saying that he had failed.

75.     During another evaluation Perez was expected to cut a hole using a chain saw. Perez had practiced this skill all week and was confident he could perform well. However, his station was set up differently from the way it had been practiced all week.

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

76.    Despite this disadvantage, Perez cut the hole and began to shut down his evaluation. While he was ending, an instructor told him to keep cutting and clean up a piece underneath the hold. Perez followed his instructor's orders, and as a result received an automatic fail because he went over time.

77.    Perez's instructor broke protocol by instructing him during the exam which led to his failure of the evaluation. If Perez had broken the chain of command and not followed orders, he would have passed the evaluation.

78.    Perez wrote to Gladys Herndon-Hill asking to have his role at the Academy reconsidered but was not given reinstatement.

### NICK CIECHALSKI

79.    Ciechalski was in his early 40s when he was enrolled in the Buffalo Fire Academy. He started at the Buffalo Fire Academy on February 2, 2020.

80.    Ciechalski left a lucrative career at Kaleida Public Safety to become a firefighter and serve his community.

81.    During the course of the Academy, he was subjected to degrading comments about his tattoos, and abusive comments about Dyngus day due to his polish heritage.

82.    Defendant Bourgeois commented that Ciechalski must be a drug dealer because he was driving a black Mercedes.

83.    On July 28, 2020, Ciechalski came late to the academy and was forced by Lt. Davis to stay in a plank position for a prolonged period as punishment for his late arrival.

84.    Due to the excessive nature of the punishment, Ciechalski sprained his shoulder and was put on restricted light duty.

{13982033.1}

13

**Tiveron Law, PLLC**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com**

85.     On August 3, 2020, he had a follow-up appointment at Great Lakes Occupational Health with Physician Assistant Nicole Jurek. Jurek cleared him to work on August 3, 2020, full duty, with no restrictions, but a sling needed to be worn.

86.     Ciechalski started ladder training but his arm pain returned when he went to raise a 35' ladder. He was brought to ECMC by Buffalo Fire (F-12) that day.

87.     Ciechalski received medical authorization from Commissioner Renaldo and Suarez from August 4, 2020-September 4, 2020.

88.     Defendants did not allow Ciechalski to fully heal, and he was ordered by Suarez to carry a filled bucket with mop to the fourth floor training staircase while his arm was still in a sling.

89.     Due to his injury, Ciechalski was released from training August 11, 2020, and placed on medical leave of absence until next academy.

90.     Ciechalski continued with physical therapy and on January 1, 2021 received a functional capacity report from Howard Physical Therapy, PLLC. The report indicated that Ciechalski had demonstrated the ability to perform most of the essential functions of a firefighter. Ciechalski reported and demonstrated no limitations and demonstrated the ability to occasionally lift 40 pounds overhead. The report indicated it may be advisable for Ciechalski to continue with physical therapy progressing to a work conditioning program to ensure he can meet all the physical demands of his job if accommodation cannot be made.

91.     On January 25, 2021, Ciechalski received a letter terminating his employment based on a "Memorandum of Agreement of August 11, 2020." See Exhibit C. Defendants refused to give Ciechalski a copy at the time. The letter claimed that one of the requirements of

{H3982033.1}                                                                                      14

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

the Memorandum of Agreement was that he receive proper medical clearance by the Buffalo Fire

Department's selected physician in time to join the next class of recruit firefighters.

92.    The letter said the City of Buffalo was notified that Ciechalski did not receive

medical clearance for the February 15, 2021 Training Academy based on the functional capacity

examination with Howard's Physical Therapy on January 5, 2021, and a consultation with Dr.

Hughes at Occupational Health on January 8, 2021.

93.    Upon information and belief, Ciechalski never saw Dr. Hughes, though

Defendant's paperwork claimed he did.

94.    As a result of this letter, Ciechalski's unpaid leave of absence expired on January

8, 2021 and he was removed from the rolls as a recruit.

95.    Ciechalski's Termination of Employment Letter is dated August 11th but he was

still compensated until October with full paycheck and received medical benefits until January of

2021.

96.    When Robert Smith mentioned Ciechalski wanted to come back to the academy to

Suarez, Suarez said, "he's too damn old."

## JURISDICTION

97.    Jurisdiction is in the United States District Court pursuant to 28 U.S.C. §§1331

and 1343(a)(3) & (4) and 42 U.S.C. §§1983, 1985, 1986, the Constitution of the United States

and the Court's supplemental (formerly pendent), and ancillary jurisdiction pursuant to 28 U.S.C.

§1367 for the Plaintiffs' State claims herein.

98.    The Plaintiffs allege that all causes of action emanate from a common nucleus of

operative facts.

{H3982033.1}

15

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

## VENUE

99.     Venue for this action is proper in the Western District of New York pursuant to 28 U.S.C. §1391 (b)(1) because all Defendants reside within the District, and pursuant to 28 U.S.C. §1391 (b)(2) because the events giving rise to the claims herein occurred within this District.

### AS AND FOR A FIRST CAUSE OF ACTION:
### 42 U.S.C. § 1983 – EMPLOYMENT DISCRIMINATION

100.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs "1" through "99" above as if more fully set forth herein.

101.    Defendants intentionally discriminated against Plaintiffs on the basis of their race, national origin, and protected class status.

102.    Defendants constructively discharged Plaintiff Green as a result of his performance on the academic evaluations they developed and altered in response to the COVID-19 pandemic.

103.    Upon information and belief, Defendant Bourgeois' decision to alter the curriculum and cover material in review sessions that would not be on the actual exams was to prevent African Americans such as Kevin Green from being able to pass the evaluations so they could be dismissed.

104.    Defendants also allowed racial comments to be made about the Plaintiffs by fellow recruits and did not foster a racially neutral environment but perpetuated an environment that resulted in discrimination based on class characteristics.

105.    When Plaintiffs asked Defendants for assistance with the course material, they were denied help and simply told to figure it out on their own.

Tiveron Law, PLLC
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

106.    Upon information and belief, some of the graded tests were graded down and recruits received lower scores than they were actually entitled to.

107.    Ex-Deputy Commissioner Shannon Street witnessed documentation that led him to believe that some of the scores of the recruits were being adjusted to support a dismissal when the Defendants did not like a particular recruit.

108.    Upon information and belief, points were shaved off some recruits written exams and instructors gave misinformation to recruits that turned out to be incorrect.

109.    Plaintiffs' protected status was a motivating factor in the Defendants' actions and caused Plaintiffs to be subjected to discriminatory treatment and targeted out.

110.    Plaintiff Kevin Green was targeted at least in part because he was Black.

111.    Plaintiff Julian Perez was targeted at least in part because he was Hispanic

112.    Plaintiff Nick Ciechalski was targeted at least in part because he was Polish and because of his age.

113.    Defendant Bourgeois' actions towards Plaintiffs were motivated by animus based on their protected class characteristics.

114.    Defendant Bourgeois actions included the removal and unavailability of remedial classes to practice academic and practical skills, refusal to provide academic assistance and adequately prepare recruits for what was on the examinations, and subjected Plaintiffs to additional disparate treatment.

115.    Defendants' refusal to allow Plaintiff Cielchalski to continue in the Academy once his injury had recovered was discrimination based on his age.

116.    For the foregoing reasons, Defendants' actions are in direct violation of the provisions of 42 U.S.C. §1983 and the Fourteenth Amendment.

{I13982033.1}                                                                                                17

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

**AS AND FOR A SECOND CAUSE OF ACTION:**
**42 U.S.C. § 1983 – EMPLOYMENT DISCRIMINATION MONELL LIABILITY**

117.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs "1" through "116" above as if more fully set forth herein.

118.    At all relevant times Defendant City of Buffalo held themselves out as a competent municipality, with agents, according to, and employees with sufficient knowledge, skill and expertise to act according to public policy and appoint agents to adequately train incoming Buffalo Fire Department recruits according to neutral fair standards without preference based on protected class characteristics.

119.    At all relevant times Defendant City of Buffalo had a duty to sufficiently hire, train and retain personnel so as to sufficiently disciple, supervise, and put into effect appropriate rules relating to the duties, behavior, and activities of their servants, employees, personnel, and police officers.

120.    At all relevant times, Defendant City of Buffalo maintained a custom, practice, and/or policy of failure to train firefighters to adequately prepare firefighter recruits, promotion of a harmful policy or custom of preferential treatment based on race, national origin, and age, and negligent retention of Defendant Bourgeois who had clearly demonstrated the inability to treat recruits with respect and repeatedly violated their constitutional rights.

121.    As the Buffalo Fire Training Academy's Chief of Training, Defendant Bourgeois had a duty to establish standards for a fire service training and education program, on a voluntary basis, and develop and conduct an examination program to certify those fire service personnel who satisfactorily demonstrate their ability to meet the requirements of the fire service training and education program standards.

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

122.    Defendant Bourgeois violated his duty to keep the Buffalo Fire Academy free from racial discrimination and took actions that would encourage discriminatory actions against Plaintiffs and others.

123.    City of Buffalo had reason to know about the unlawful actions of Chief Bourgeois. Deputy Commissioner Shannon Street had raised concerns about what was happening at the Buffalo Fire Academy and that Defendant Bourgeois was not following the proper chain of command and reporting employment and personnel issues to him for review.

124.    Additionally, instructors for the Buffalo Fire Academy were not trained or prepared to teach a class of recruits, but rather moved from a position in the field to one as an instructor without any training.

125.    The City of Buffalo knew to a moral certainty that firefighters who were untrained as instructors would encounter difficult situations dealing with discriminatory conduct and other constitutional abuses in training a class of recruits. If these instructors had been provided with proper training these situations could have been better handled and de-escalated.

126.    Despite these issues, the City of Buffalo did not take adequate steps to solve ongoing personnel discrimination occurring at the Buffalo Fire Academy. In fact, through Commissioner Renaldo, they took active steps to ensure that the constitutional abuses of the Plaintiffs and others would still occur.

127.    The City of Buffalo actively adopted Defendant Bourgeois' adverse employment actions by removing the oversight of Defendant Bourgeois and the Buffalo Training Academy from Ex-Deputy Shannon Street and moving it to Defendant Suarez who was typically responsible for oversight of equipment, tools, and apparatus and was known to rubber stamp Commissioner Renaldo's requests.

{H3982033.1}

19

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

128.    This change was initiated and approved by Defendant Commissioner Renaldo who approved this action to prevent proper oversight from being exercised over Bourgeois who continued to commit unconstitutional and discriminatory actions towards the Buffalo Fire Academy recruits.

129.    The City of Buffalo's policies, customs, and/or practices allowed Defendants to deprive Plaintiffs of their rights under both federal and state law, by subjecting them to discrimination based on their protected characteristics, designing a curriculum intended to prevent them from passing, and subjecting them to discretionary dismissal from Defendant Bourgeois without adequate review.

130.    As a result of Defendants' actions, Plaintiffs lost their dream to become firefighters, and were discharged from the Buffalo Fire Academy due to adoption of a policy and procedure put forth by Bourgeois that led to constitutional abuses and violations of Plaintiffs' constitutional rights and guaranteed protections.

## AS AND FOR A THIRD CAUSE OF ACTION:
## 42 U.S.C. § 1983 – EQUAL PROTECTION (CLASS OF ONE)

131.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs "1" through "130" above as if more fully set forth herein.

132.    Plaintiffs were intentionally treated differently from other recruits who were similarly situated and there was no rational basis for the difference in treatment by the Defendants.

133.    Other recruits who had failed academic evaluations and field evaluations at the Buffalo Fire Academy were permitted by Defendant Bourgeois to continue at the Academy and

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

ultimately some were offered positions with the Buffalo Fire Department while Plaintiffs were dismissed for the same or even lower academic performance.

134.    These recruits had also not received adequate marks under Defendant Bourgeois' modified rules and regulations, but at the behest of Mayor Brown they were permitted to continue in the academy.

135.    Upon information and belief, there was no rational basis for the difference in treatment and Defendants' discretion was exercised to intentionally discriminate against Plaintiffs.

136.    Upon information and belief, Mayor Brown's direction to Defendant Bourgeois that some recruits would be permitted to continue despite their academic and field evaluation failures was based on impermissible considerations to punish recruits for their free expression and First amendment speech in not supporting his political party and campaign.

137.    Based on the foregoing reasons, Plaintiffs were treated differently from other recruits whom the Mayor and Defendants permitted to continue and there was no rational basis for the difference in treatment.

### AS AND FOR A FOURTH CAUSE OF ACTION:
### 42 U.S.C. § 1983 – EQUAL PROTECTION (SELECTIVE ENFORCEMENT)

138.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in paragraphs "1" through "137" above as if more fully set forth herein

139.    Plaintiffs were intentionally treated differently from other recruits who were similarly situated and there was no rational basis for the difference in treatment.

140.    Other recruits who had failed academic evaluations and field evaluations were permitted by Defendant Bourgeois to continue at the Academy and ultimately some were offered positions with the Buffalo Fire Department while Plaintiffs were dismissed.

**Tiveron Law, PLLC**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com**

141.    These recruits had also not received adequate marks under Defendant Bourgeois' modified rules and regulations, but at the behest of Mayor Brown they were permitted to continue in the academy.

142.    Upon information and belief, there was no rational basis for the difference in treatment and Defendants' discretion was exercised to intentionally discriminate against Plaintiffs based on their protected class characteristics of race and age, as well as bad faith to cause them to lose their positions in the Buffalo Fire Academy.

143.    Based on the foregoing reasons, Plaintiffs were treated differently from other recruits based on their protected class characteristics of race, national origin, age and were subject to adverse employment actions of dismissal while other recruits similarly situated were not.

## AS AND FOR A FIFTH CAUSE OF ACTION:
## NEW YORK HUMAN RIGHTS LAW [Executive Law § 296]

144.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in paragraphs "1" through "143" above as if more fully set forth herein

145.    Plaintiffs were members of a protected class. Plaintiff Kevin Green is an African American. Plaintiff Julian Perez is a Hispanic American. Plaintiff Nick Ciechalski is a Polish American who is over forty years old.

146.    All Plaintiffs were qualified to hold their positions with the Buffalo Fire Academy and would have been able to graduate and secure jobs if not for the Defendants' discriminatory actions based on their protected characteristics.

147.    Plaintiff Kevin Green suffered an adverse employment action when he was dismissed from the Buffalo Fire Academy for academic performance.

{H3982033.1}

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

22

148.    Plaintiff Julian Perez suffered an adverse employment action when he was dismissed from the Buffalo Fire Academy for field evaluation failures.

149.    Plaintiff Nick Ciechalski suffered an adverse employment action when he was subjected to further risk of injury, which forced him to leave the Spring 2020 Academy and was denied opportunity to continue in the Academy due to discrimination based on his age.

150.    All of these adverse actions against the Plaintiffs occurred under circumstances where the Chief of Training was deliberately changing standards and making it harder for those in Plaintiffs' protected groups to pass the Buffalo Fire Academy.

151.    Additionally, actions taken by the Chief of Training Bourgeois against the Plaintiffs create an inference of discrimination against them based on protected characteristics as others were permitted to continue despite having similar academic and field evaluation shortcomings.

152.    Further, under the regulations promulgated by Bourgeois, there was no opportunity for recruits to make up any poor performance and failure of one subject gave Bourgeois exclusive discretion to dismiss a recruit who overall had maintained an above 70% GPA.

**WHEREFORE,** Plaintiffs pray for the following relief:

A.    On Plaintiffs' first cause of action, a judgment for compensatory damages in the amount of three million dollars ($3,000,000.00) for each of the three Plaintiffs, plus reasonable attorney fees pursuant to 42 U.S.C. § 1988, against all Defendants, with punitive damages against the Defendants in their personal capacities.

{H3982033.1}

23

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

B.     On Plaintiffs' second cause of action, a judgment for compensatory damages in the amount of Three Million Dollars ($3,000,000.00) for each of the three Plaintiffs, plus reasonable attorney fees pursuant to 42 U.S.C. § 1988, against the City of Buffalo;

C.     On Plaintiffs' third cause of action, a judgment for compensatory damages in the amount of Three Million Dollars ($3,000,000.00) for each of the three Plaintiffs, plus reasonable attorney fees pursuant to 42 U.S.C. § 1988, against all Defendants, with punitive damages against the Defendants in their personal capacities.

D.     On Plaintiffs' fourth cause of action, a judgment for compensatory damages in the amount of Three Million Dollars ($3,000,000.00) for each of the three Plaintiffs, plus reasonable attorney fees pursuant to 42 U.S.C. § 1988, against all Defendants, with punitive damages against the Defendants in their personal capacities.

E.     On Plaintiffs' fifth cause of action, a judgment for in the amount of Three Million Dollars ($3,000,000.00) for each of the three Plaintiffs, compensatory damages and  attorney fees or any other relief appropriate under the New York State Human Rights law.

F.     A jury trial on all appropriate issues;

G.     An award of costs and expenses against the Defendants;

H.     Any and all other relief this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

The Plaintiffs respectfully request a jury trial of all matters so triable.

Dated: August 21, 2024
       Amherst, New York

Steven M. Cohen, Esq.
**TIVERON LAW, PLLC**
*Attorneys for Plaintiffs*
2410 North Forest Road, Ste. 301
Amherst, New York 14068
Telephone: 716-636-7600
Email: scohen@tiveronlaw.com

{H3982033.1}                                                                                                  24

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

To:    Joshua B. Levitt, Esq.
        **HODGSON RUSS, LLP**
        *Attorneys for Defendants*
        140 Pearl Steet, Ste. 100
        Buffalo, New York 14202
        Telephone: 716-856-4000
        Email: jlevitt@hodgsonruss.com

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com